IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE:  MICHAEL J. JACOBS,

      Debtor.                 U.S. Bankruptcy Case No. 19-12591-j11

MICHAEL JACQUES JACOBS,

      Appellant,

      vs.                    Civ. No. 23-77  JB/JFR

UNITED STATES TRUSTEE,

      Appellee.

MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court by Order of Reference[1] in accordance with 28

U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849

(10th Cir. 1990).  Doc. 3.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Michael Jacques Jacobs ("Debtor" or "Appellant") [3] and his non-filing spouse, Ruby

Handler Jacobs, executed a mortgage dated November 9, 2005 ("Mortgage") on their primary

residence located at 800 Calle Divina, Albuquerque, New Mexico ("Property") to secure a thirty-

---

[1] By an Order of Reference filed February 13, 2023 (Doc. 3), the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.

[2] Unless otherwise indicated, the Court's background recitation here tracks the general background and procedural history set forth in the Bankruptcy Court's October 14, 2022, Memorandum Opinion and Order.  Doc. 20 at 288-90.

[3] Mr. Jacobs is proceeding *pro se*. *See Ogden v. San Juan Cty*., 32 F.3d 452, 455 (10th Cir. 1994) (pleadings from pro se litigants are construed liberally, but pro se litigants are obligated to comply with the rules of civil procedure).

year adjustable-rate note ("Note").  Doc. 23 at 12.  The Note had a maturity date of December 1, 2035, and called for monthly payments, initially in the amount of $2,204.43, beginning on January 1, 2006.  *Id.*  Debtor and his non-filing spouse discontinued making payments on the Note beginning in November of 2011.  *Id.*

On October 5, 2012, DLJ Mortgage Capital ("DLJ Mortgage"), the holder of the Mortgage, filed a complaint in the Second Judicial District Court, State of New Mexico, for foreclosure of the Property.  *Id.* at 13 (citing *DLJ Mortgage Capital, Inc., v. Ruby Handler Jacobs a/k/a Ruby Jacobs, Michael Jacobs, et al.,* Case No. D-2020-CV-2012-09237).  On June 5, 2018, the Second Judicial District Court entered a judgment granting DLJ Mortgage an *in rem* foreclosure judgment against Debtor's Property.  Debtor filed an appeal and the foreclosure judgment was stayed with commencement of Debtor's bankruptcy petition.

On November 13, 2019, Debtor filed his Chapter 11 Petition in the United States Bankruptcy Court for the District of New Mexico.  On May 6, 2020, DLJ Mortgage filed a proof of claim and a motion for relief from stay.  On May 24, 2021, the bankruptcy court entered an order granting *in rem* stay relief.  Prior to the final hearing on the motion for relief from stay, the bankruptcy court determined that the foreclosure judgment had preclusive effect and established DLJ Mortgage's standing to file its motion for relief.  In granting relief, the bankruptcy court found that "Debtor and Mrs. Jacobs' multiple prior bankruptcy filings affected the Property and were 'part of a scheme to delay, hinder, or default creditors.'"  Doc. 20 at 289.  The bankruptcy court entered an order allowing DLJ Mortgage's claim as a secured claim in the amount of $497,457.45.  *Id.*  DLJ Mortgage's Proof of Claim reported pre-petition arrearages in the amount of $239,195.44.  *Id.* at 295.

In November of 2021, Debtor and DLJ Mortgage participated in an unsuccessful mediation. Debtor then filed multiple motions seeking to alter, amend or for relief from the bankruptcy court's order allowing DLJ Mortgage's claim, all of which the bankruptcy court denied. Debtor appealed the bankruptcy court's orders which at the time of initiating his appeal before this Court were pending with the Tenth Circuit Bankruptcy Appellate Panel.

Debtor filed four proposed reorganization plans over the course of his case in bankruptcy court. After Debtor filed his third reorganization plan on March 5, 2022, the United States Trustee ("Trustee" or "Appellee"), on March 16, 2022, filed a motion to convert Debtor's Chapter 11 bankruptcy case to a case under Chapter 7, or alternatively to dismiss the case. Doc. 23 at 14. The Trustee argued there that grounds for either conversion or dismissal included (1) Debtor's pre-petition bad faith, *i.e.,* Debtor and his non-filing spouse having filed multiple bankruptcy filings in an effort to hinder, delay or defraud DLJ Mortgage's foreclosure efforts on Debtor's principal residence; and (2) Debtor's failure to file an acceptable plan within a reasonable time. Doc. 20 at 181-87, 287, Doc. 23 at 14-15. After a preliminary hearing, the parties simultaneously filed supplemental briefs addressing the confirmability of Debtor's third reorganization plan. Doc. 23 at 15. The Trustee argued in its supplemental brief that Debtor's third proposed plan impermissibly violated the anti-modification prohibition found in 11 U.S.C. § 1123(b)(5) by modifying DLJ Mortgage's rights. *Id.* Debtor also filed a supplemental brief to which he attached a fourth reorganization plan titled "Disclosure Statement and a Second Amended Plan" ("Second Amended Plan"). *Id.*

After holding a final evidentiary hearing over four non-consecutive days on the Trustee's motion to convert or dismiss, on October 14, 2022, United States Bankruptcy Judge Robert H. Jacobvitz entered a Memorandum Opinion and Order holding that Debtor's Second Amended

Plan was facially unconfirmable and that dismissal was in the best interest of creditors and the estate.  Judge Jacobvitz concurrently entered an Order Dismissing Chapter 11 Case.

On October 28, 2022, Debtor filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e).  Doc. 20 at 326-56.  Therein, Debtor requested the bankruptcy court to "rule for Debtor in that anti-modification per 11 U.S.C. § 1123(b)(5) does not apply thereby denying UST's Motion [for] cause per § 1112(b) [and] provide a date for a third amended Plan[.]"  Doc. 20 at 353.

On January 6, 2023, the Bankruptcy Court denied Debtor's Motion to Alter or Amend Judgment concluding his arguments to be without merit.  Doc. 20 at 357-69.

On January 10, 2023, Appellant filed a Notice of Appeal and Statement of Election in the U.S. Bankruptcy Court for the District of New Mexico.  Doc. 1-1 at 7-8.  Appellant indicated that the subject of his appeal is the Bankruptcy Court's January 6, 2023, Memorandum on Relief from Motion to Dismiss.  *Id.*  On January 11, 2023, Appellant's notification of appeal transmitted from the U.S. Bankruptcy Court to the Bankruptcy Appellate Panel of the Tenth Circuit ("BAP").  *Id.* at 6.  On January 25, 2023, Appellee United States Trustee timely elected to proceed in District Court.  *Id.*  at 123-24.  On January 25, 2023, BAP entered an Order Transferring Appeal to the U.S. District Court.  *Id.* at 1-2.  On January 26, 2023, the Bankruptcy Clerk certified that the Order Transferring BAP Appeal to the U.S. District Court was served on the parties.  Doc. 1.  On June 14, 2023, the Court entered an Order Setting Briefing Schedule.  Doc. 17.  On July 14, 2023, Appellant filed his Brief and Appendix.  Docs. 18, 20.  On September 5, 2023, Appellee filed its Response.  Doc. 23.  On October 11, 2023, Appellant filed his Reply.  Docs. 25, 26.

In his Reply, Debtor informed the Court that while this appeal has been pending, he and DLJ Mortgage reached a settlement with a modified loan agreement having been fully executed. Doc. 26 at 2. As a result, the underlying state court foreclosure action, as well as related appeals and various adversary actions, have been dismissed. *Id.* Given this intervening circumstance, on January 23, 2024, the Court entered an Order for Supplemental Briefing, ordering the parties to submit simultaneous briefs addressing whether, based on Appellant's Reply, this appeal is moot in the constitutional sense because there is no longer a "case or controversy" and the constitutional basis for federal jurisdiction no longer exists. Doc. 27. Having heard from the parties, the Court is persuaded that were the Court to determine the bankruptcy court abused its discretion in dismissing Debtor's case and denying Debtor's Motion to Alter or Amend Judgment that meaningful relief remains available and that the Court has the requisite jurisdiction to proceed.[4]

The Court, therefore, having reviewed the parties' submissions and the relevant law, and for the reasons set forth herein, finds that Appellant's Brief in Chief is not well taken and recommends that the bankruptcy court's October 14, 2022, Memorandum Opinion and concurrent Order Dismissing Chapter 11 Case and January 6, 2023, Memorandum Opinion and concurrent Order Denying Motion to Alter and Amend Judgment be **AFFIRMED**.

## II.  GOVERNING LEGAL PRINCIPLES

### A.      Standard of Review

District courts have jurisdiction to hear appeals from the Bankruptcy Courts' final judgments, orders, and decrees. 28 U.S.C. § 158(a) (2018). The district court applies the same

---

[4] Although the bankruptcy court noted that "[n]o other creditor has actively participated in this bankruptcy case," (Doc. 20 at 321), Debtor's Second Amended Plan nonetheless lists seven additional creditors and unimpaired claims (Doc. 20 at 273).

standards of review that govern appellate review in other cases. *See, e.g., Sender v. Johnson* (*In re Hedged–Investments Assocs., Inc.*), 84 F.3d 1267, 1268 (10th Cir. 1996).

The Court reviews a bankruptcy court's dismissal "for cause" under an abuse of discretion standard. *In re Muth*, 2014 WL 1712527, at *2 (B.A.P. 10th Cir. May 1, 2014). The bankruptcy court's denial of a Rule 59(e) motion to alter or amend judgment is also reviewed for abuse of discretion. *Spring Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 535 (10th Cir. 2016). A court abuses its discretion when it "(1) enters an arbitrary, capricious, whimsical, or manifestly unreasonable judgment or (2) applies the wrong legal standard." *Id.*

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *Hall v. Vance*, 887 F.2d 1041, 1043 (10th Cir. 1989). A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). If the bankruptcy court's account of the evidence is plausible in light of the record, an appellate court cannot reverse even if it would have weighed the evidence differently. *In re Iverson*, Nos. 01-018, 00-12058, 2001 WL 863444, at *6 (B.A.P. 10th Cir. July 31, 2001).

This Court may affirm on any grounds that are adequate and apparent in the record. *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016). The Court's function when sitting as an appellate court is to review the bankruptcy court's decision based on the record that was before the bankruptcy court, not to reconsider the bankruptcy court's decision based on new evidence. *See Fassett v. Delta Kappa Epsilon* (New York), 807 F.2d 1150, 1165 (3rd Cir. 1986), *cert. denied,* 487 U.S. 1070 (1987) (stating "[t]he only proper function of a court of appeals is to review the decision below on the basis of the record that was before the [trial] court"); *see also* Fed. R. Bankr. P. 8009(a)(1)(A) (explaining that appellant designates the record on appeal).

B.     **Relevant Chapter 11 Statutory Provisions**

    1.     **11 U.S.C. § 1112**

Section 1112(b) governs involuntary dismissal or conversion of chapter 11 cases. Section 1112(b)(1) provides, in relevant part

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  The statutory directive of § 1112(b)(1) is that the court "shall" convert or dismiss if "cause" is shown unless the Court appoints a trustee or examiner.  *See In re Picacho Hills Util. Co.,* 518 B.R. 75, 81 (Bankr. D.N.M. 2014) ("Once cause is established under § 1112(b), the Court must dismiss or convert the case, or appoint a Chapter 11 trustee ....").

However, § 1112(b)(2) contains an "unusual circumstances" exception to the statutory directive of § 1112(b)(1).  Section 1112(b)(2) provides:

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within ... a reasonable period of time; and
> >
> > (B) the grounds for converting or dismissing the case include an act or omission of the debtor ...
> >
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > >
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2).

"The movant bears the burden of establishing cause by a preponderance of the evidence."

*In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012). "Cause" includes

> **(A)** substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> **(B)** gross mismanagement of the estate;
> **(C)** failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> **(D)** unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> **(E)** failure to comply with an order of the court;
> **(F)** unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> **(G)** failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> **(H)** failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> **(I)** failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> **(J)** failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> **(K)** failure to pay any fees or charges required under chapter 123 of title 28;
> **(L)** revocation of an order of confirmation under section 1144;
> **(M)** inability to effectuate substantial consummation of a confirmed plan;
> **(N)** material default by the debtor with respect to a confirmed plan;
> **(O)** termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
> **(P)** failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

22 U.S.C. § 1112(b)(4). The itemized list in § 1112(b)(4) constituting "cause" for conversion or dismissal "is illustrative, not exhaustive." *Whetten*, 473 B.R. at 382; *see also Picacho Hills,* 518 B.R. at 80 ("The list [of 16 grounds that constitute 'cause' for conversion or dismissal] is not exhaustive.").

### 2. **11 U.S.C. § 1123**

Section 1123 is entitled "Contents of plan." Section 1123(a) specifies what a plan "shall" contain. For example, the plan must specify the classes of claims or interests that are not impaired by the plan and specify the treatment of claims that are impaired. 11 U.S.C. §§

1123(a)(2) and (3).  The plan also must provide adequate means for the plan's implementation,

such as satisfying or modifying any lien and/or curing or waiving of any default.  11 U.S.C.

§§ 1123(a)(5)(E) and (G).  Subject to subsection (a), § 1123(b) specifies what a plan "may"

contain.  Relevant here, § 1123(b)(5) provides that a plan may "modify the rights of holders of

secured claims, *other than a claim secured only by a security interest in real property that is the*

*debtor's principal residence* ...." (emphasis added).[5]

### 3.   <u>11 U.S.C. § 1124</u>

Section 1124 is entitled "Impairment of claims or interests."  Impairment determines

whether a class is required to vote for or against a proposed plan.  *See* 11 U.S.C. § 1126(a)

(Acceptance of Plan) (providing that the "holder of a claim or interest allowed under section 502

... may accept or reject a plan.").   "Impairment" of a creditor's claim equates to an alteration of

creditor's rights.  *In re K Lunde, LLC*, 315 B.R. 587 (Bankr. D. Colo. 2014).  "In general, a class

of claims is impaired under section 1124 if the plan alters the legal, equitable or contractual

---

[5] In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court highlighted Congress' focus on "rights" in this context as follows:

> That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage.  Rather it focuses on the modification of the "*rights of holders*" of such claims . . . .

> The term "rights" is nowhere defined in the Bankruptcy Code.  In the absence of controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." (citations omitted).  Moreover, we specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." (citation omitted).  The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under (state) law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. . . .

*Nobelman v. American Savings Bank*, 508 U.S. at 328–330, 113 S.Ct. at 2109–2110.

rights to which the holders of such claims are otherwise entitled, unless the only alteration is the reinstatement of the original maturity and curing defaults with respect to an accelerated debt." 7 *Collier on Bankruptcy* ¶ 1124.02 (Richard Levin & Henry J. Sommer eds., 16th ed.).  For example, changing the contractual interest rate,[6] making deferred payments on terms different from the original contract,[7] or stretching payment beyond the maturity of its original contract,[8] all constitute impairment of the claim.  *See In re S-Tek 1 LLC*, No. 20-12241-J11, 2021 WL 5858906, at *3 (Bankr. D.N.M. Dec. 9, 2021).  A claim can also be impaired by changing noneconomic contract terms.  *Id.*

    To be unimpaired by a plan, the debtor's plan must either "leave[ ] unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," § 1124(1), or satisfy a set of criteria to cure any default, reinstate the claim's maturity date, compensate the creditor for any damages, and not otherwise "alter the legal equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." § 1124(2); *see also* 7 *Collier on Bankruptcy* ¶ 1124.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Under section 1124(2), in general, the plan can leave a class of claims or interests unimpaired by curing defaults, reinstating the maturity of the claims or interests, compensating the holders for any damages, and not otherwise impairing the rights of the holders.").

---

[6] *In re Valencia Flour Mill, Ltd.*, 348 B.R. 573, 577 (Bankr. D.N.M. 2006) (creditor whose claim under debtor's proposed plan would be paid at an interest rate other than the contract rate was impaired).

[7] *In re G.L. Bryan Invs., Inc.*, 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (citing *In re Grandfather Mountain Ltd.*, 207 B.R. 475, 485 (Bankr. M.D.N.C. 1996)).

[8] 7 *Collier on Bankruptcy* ¶ 1124.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[A] delay in payment of a claim beyond its contractual maturity date results in impairment.") (citing *G.L. Bryan,* 340 B.R. at 391)).

The burden is on the individual Chapter 11 debtor, as plan proponent, to demonstrate that a proposed plan leaves a creditor's rights unaltered.  11 U.S.C. § 1124; *see also In re Reuter*, 427 B.R. 727, 773 (Bankr. W.D. Mo. 2010).

### 4.   <u>11 U.S.C. § 1129</u>

Section 1129 governs the confirmation of a plan.  "To be confirmable, a plan must comply with all applicable provisions of 11 U.S.C. § 1129."  *Search Mkt. Direct, Inc. v. Jubber (In re Paige),* 685 F.3d 1160, 1177 (10th Cir. 2012); *see also In re Experient Corp.,* 535 B.R. 386, 400 (Bankr. D. Colo. 2015) (same).  Section 1129(a)(1)–(16) allows for confirmation where each class has either accepted the plan or is not impaired.  *Dill Oil Co., LLC v. Stephens (In re Stephens),* 704 F.3d 1279, 1284 (10th Cir. 2013) (holding that Section 1129(a) "allows for confirmation where each class of creditors consents").  Alternatively, Section 1129(b) provides a so-called "cramdown" mechanism that permits confirmation without the acceptance of each class, provided that additional requirements are satisfied, including that the reorganization plan "does not discriminate unfairly, and is fair and equitable" with respect to non-accepting impaired classes.  11 U.S.C. § 1129(b)(1); *see also Stephens,* 704 F.3d at 1284 (discussing "fair and equitable" requirement).  Section 1129(b) also contains the "absolute priority rule." *Id.*  The plan proponent "must demonstrate compliance [with Section 1129] by a preponderance of the evidence."  *Paige,* 685 F.3d at 1177; *see also FB Acquisition Prop. I, LLC v. Gentry (In re Gentry),* 807 F.3d 1222, 1226 (10th Cir. 2015) (confirming that burden of proof is on plan proponent).  In any event, the Bankruptcy Court has an independent duty to ensure compliance with all confirmation standards.  *Cf. United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 278, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (holding that Bankruptcy Court must independently ensure that Chapter 13 plan complies with Bankruptcy Code); *Kaiser Aerospace*

*& Elecs. Corp v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1299 n.4 (11ᵗʰ

Cir. 2001) ("A court must independently satisfy itself that these criteria [11 U.S.C. § 1129] are

met.  Thus, it must consider facts relating to these criteria even in the absence of an objection.");

*Williams v. Hibernia Nat'l Bank (In re Williams)*, 850 F.2d 250, 253 (5ᵗʰ Cir. 1988) (same); *In re

Autterson*, 547 B.R. 372, 389 (Bankr. D. Colo. 2016) (same).

### III.  ISSUES ON APPEAL

Appellant raises and his brief addresses five arguments on appeal as follows:  (1) whether

the bankruptcy court abused its discretion by concluding that the Second Amended Plan violated

the anti-modification prohibition in § 1123(b)(5) because it did not propose to pay all

preconfirmation arrearages in full by the effective date of the plan; (2) whether the bankruptcy

court erred by dismissing the bankruptcy case for "cause" pursuant to 11 U.S.C. § 1112(b)

because Debtor's proposed Second Amended Plan was filed after his chapter 11 case was

pending for two and one-half years without any payments on his home mortgage loan secured

only by Debtor's principal residence; (3) whether the bankruptcy court abused its discretion by

specifically ruling that dismissal, rather than conversion, was in the best interest of creditors of

the estate; (4) whether the bankruptcy court abused its discretion by disregarding the indubitable

equivalent concept because it believed it was not relevant to its conclusion that the Second

Amended Plan cannot be confirmed because it violates the anti-modification prohibition in

§ 1123(b)(5); and (5) whether the bankruptcy court abused its discretion by failing to promulgate

the Second Amended Plan due to the inappropriate objection of DLJ Mortgage's counsel, who

was not a party to the motion.  Doc. 20.  Based on these arguments, Appellant asks this Court to

vacate the bankruptcy court's order, enter judgment for Appellant, and remand this matter to the

bankruptcy court to allow Appellant to file a Third Amended Disclosure and Reorganization Plan. *Id.* at 28.

The Court addresses each argument in turn.

## IV.  ANALYSIS

**A.      Whether the bankruptcy court has abused its discretion by concluding that the Second Amended Plan violates the anti-modification prohibition in § 1123(b)(5) because it does not propose to pay all preconfirmation arrearages in full by the effective date of the plan.**

When a debtor files a case to reorganize under chapter 11, the debtor becomes the "debtor-in-possession" of the estate.  11 U.S.C. § 1101.  The debtor-in-possession retains control over the property of the estate but must repay creditors according to the terms of a court-approved reorganization plan.  11 U.S.C. § 1123.  A chapter 11 debtor-in-possession has the rights, powers, and duties of a trustee, 11 U.S.C. §§ 1106-1108, including the duty to file a plan "as soon as practicable," 11 U.S.C. § 1106(a)(5), and owes a fiduciary duty to the estate and creditors.  *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985).

Section § 1123 governs the contents of reorganization plans under Chapter 11 and provides in pertinent part that

(a)     Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
. . .

(2)     specify any class of claims or interests that is not impaired under the plan;

(3)     specify the treatment of any class of claims or interests that is impaired under the plan;

. . .

(5)     provide adequate means for the plan's implementation, such as—

. . .

13

(E)      satisfaction or modification of any lien;

. . .

(G)      curing or waiving of any default;

. . .

(b)      Subject to subsection (a) of this section, a plan may—

. . .

(5)      modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; and

. . .

11 U.S.C. § 1123 (emphasis added).

Section 1124 governs impairment of claims or interests under Chapter 11 and provides in

pertinent part that

Except as provided in section 1123(a)(4) of this title,[9] a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1)      leave unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2)      notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A)      *cures any such default that occurred before or after the commencement of the case under this title*, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;[10]

---

9 11 U.S.C. § 1123(a)(4) explains that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest[.]"

10 Section 365 of Chapter 11 addresses executory contracts and unexpired leases and is not applicable to the issue here.  11 U.S.C. § 365 (Executory contractors and unexpired leases).

(B)   reinstates the maturity of such claim or interest as such maturity existed before such default;

(C)   compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

. . .

(E)   does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124 (emphasis added).

In completing his Second Amended Plan for the bankruptcy court's consideration, Debtor identified DLJ's Mortgage's claim as an unimpaired Class 1 secured claim. Doc. 20 at 273. Debtor proposed to treat DLJ Mortgage's claim as follows:

Class 1 is unimpaired by this Plan. DLJ currently and solely claims $497,457.45 in its Proof of Claim. The DLJ appraised amount of the property, at the time of the Petition, was secured $375,000.00. Proof of Claim is challenged in the BAP. Debtor does not pay property tax and he is paying for home insurance. Debtor will be eligible for a Veteran's Loan after the customary waiting period, or DLJ could sell the loan. In the meantime, Debtor offers as indubitable equivalent cash payments and a Promissory Note secured by real property totaling $519,044.75. Debtor shall pay $22,044.75 as an initial payment and monthly mortgage payments of $1,469.65 along with minimum monthly Promissory Note payments of $417.75 (toward arrearages), totaling $1,887.40 (as outlined in the Disclosure Statement and in Debtor's Brief). This offer stands until if and/or when outstanding adjudication is concluded and may require reexamination by the Court.

Doc. 20 at 273.

In the October 14, 2022, Memorandum Opinion, United States Bankruptcy Judge Robert Jacobvitz observed at the outset that Debtor's plan failed to establish when the "customary waiting period" referenced in relation to a possible Veteran's Loan would end or the likelihood of Debtor's obtaining such a loan; that Debtor's plan contemplated further amendment based on appellate review results; that the Second Amended Plan elsewhere asserted the value of the

15

Property was $576,000; and that the prepetition arrearages, not specified, were $239,195.44.[11]

Doc. 20 at 295.  Those preliminary observations aside, Judge Jacobvitz ultimately determined

that Debtor's proposed Second Amended Plan did not comply with the anti-modification

prohibition in § 1123(b)(5) and the requirements of § 1124 to cure DLJ Mortgage's arrearages

and render its claim "unimpaired" and was, therefore, unconfirmable.  Doc. 20 at 300.  Judge

Jacobvitz explained that

> § 1123(b)(5), when read in conjunction with § 1124(2), requires a chapter 11 debtor
> to pay all preconfirmation arrearages on a claim secured only by the debtor's
> principal residence in full, and satisfy § 1124(2)'s other requirements to unimpair
> a claim, by the plan effective date.[ ]  Because Debtor's Second Amended Plan does
> not provide for payment of all arrearages due DLJ by the plan effective date,
> Debtor's proposed treatment of DLJ's claim violates § 1123(b)(5)'s anti-
> modification prohibition and the plan cannot be confirmed.

Doc. 20 at 301-02.  Judge Jacobvitz's supporting analysis that followed was extensive.  *Id.* at

302-19.  Judge Jacobvitz provided an analysis regarding the legislative history and overview of

§§ 1123(b)(5) and 1124(2) and how those sections compared with §§ 1322(b)(2) and (5)[12] as

applied to home mortgages; a discussion of relevant terms, *i.e.,* rights, modifying, unimpairment,

and curing; and he discussed case law holding that § 1123(b)(5) permits a plan to provide for a

cure of arrearages in installments and why it was not persuasive.  *Id.*

Debtor argued in his Motion to Alter or Amend Judgment, as he does here, that Judge

Jacobvitz erred in concluding that to confirm a chapter 11 plan Debtor must pay all

---

[11] In Debtor's July 11, 2022, Disclosure Statement, he indicated prepetition arrearages on DLJ's Mortgage's claim of $239,195.44, which amount matches the prepetition arrearage reported in DLJ's proof of claim.  Doc. 20 at 261, 295.

[12] 11 U.S.C. § 1322(b)(2) provides that a plan of reorganization under Chapter 13 may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims or leave unaffected the rights of holders of any class of claims"; and 11 U.S.C. § 1322(b)(5) provides "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]"

preconfirmation arrearages on his home mortgage loan in full by the effective date of the plan. In support, Debtor asserted that Judge Jacobvitz improperly concluded that DLJ's claim was secured only by Debtor's principal residence and erred in not accepting holdings from case law outside of the Tenth Circuit in which courts have determined that curing preconfirmation arrearages over time after confirmation of a reorganization planned is consistent with the statutory provisions of Chapter 11.  Doc. 20 at 344-48.  As to the former, Judge Jacobvitz explained in his January 6, 2023, Memorandum Opinion that the petition date is the determinative date for evaluating whether a secured creditor's claim is secured only by a debtor's principal residence that a debtor "may not avoid application of § 1123(b) by granting the secured creditor an additional lien under its plan in order to transform the claim into a claim that is no longer secured solely by the debtor's principal residence."[13]  Doc. 20 at 368.  As to the latter, Judge Jacobvitz summarized that

> Section 1123(b)(5) prohibits a plan from modifying the rights of a holder of a claim secured only by the debtor's principal residence.  The Court concluded that to confirm a plan, Debtor must feasibly propose to pay all preconfirmation arrearages on his home mortgage loan in full by the effective date of the plan.  The Court estimated the arrearage amount to be almost $200,000.[]  The preconfirmation arrearage is substantial because Debtor has not made a mortgage payment on his home since sometime in late 2011.  Instead of proposing to pay the preconfirmation arrearage in full by the effective date of the plan, the Second Amended Plan proposes that Debtor will pay $22,044.75 to DLJ as an initial payment when the plan is confirmed, and thereafter make monthly mortgage payments of $1,469.65 plus $417.75 toward arrearages, totaling $1,887.40 per month.[]  At that rate, it would take many years under the plan to cure all of the preconfirmation arrearages.

---

[13] Debtor argued that in his proposed Second Amended Plan, he was offering his "unencumbered Oregon property as indubitable equivalent in the form of a cash collateral combined with a promissory note secured with the real property, to place in escrow" in his treatment of DLJ Mortgage's claim.  Doc. 20 at 345.  In the October 14, 2022, Memorandum Opinion, Judge Jacobvitz discussed Debtor's income sources and found that "Debtor owns real property in Oregon . . . .  Debtor scheduled the Oregon Property with a value of $150,000.[]  Debtor's Second Amended Plan values the Oregon Property at $483,400.[]  The Oregon Property is unencumbered.  Debtor anticipates receiving rental income of between $1,600 and $2,200 per month for the Oregon Property."  Doc. 20 at 297.

Doc. 20 at 359.  Judge Jacobvitz explained he had discussed at length the reasoning of the case

law upon which Debtor relied and why he did not find it persuasive.  *Id.* at 360-61.  Judge

Jacobvitz additionally acknowledged the modifying and curing provisions of 11 U.S.C. §§

1123(a)(5)(E) and (G) and concluded that the *general provisions* for modifying a lien and/or

curing a default could not be relied upon to avoid the *specific requirements* of 11 U.S.C.

§ 1123(b)(5) applicable to a subset of secured creditors whose claims are secured only by a

debtor's principal residence.  *Id.*

      In Appellant's Brief now before this Court, Debtor persists in his disagreement with

Judge Jacobvitz's conclusion that Debtor's proposed Second Amended Plan would modify DLJ

Mortgage's rights.  Doc. 20 at 14-16.  In support, Debtor first argues that his proposed plan

complies with § 1123(b)(5) because it provided for full payment of DLJ Mortgage's claim by the

loan maturity date of December 1, 2035, albeit with a putative balloon payment he asserts is not

precluded by the Note, and further argues that the Second Amended Plan set a different monthly

mortgage payment to reflect his "real time obligation" because he was being overcharged for

escrow payments.  *Id.*  Next, Debtor restates his disagreement with Judge Jacobvitz's not finding

persuasive certain nonbinding case law which holds that Chapter 11 debtor-mortgagors can cure

their prepetition arrearages on residential mortgages by making installment payments under their

plan and that doing so does not modify a mortgagee's rights.  *Id.* at 16-18.  Last, Debtor

disagrees with Judge Jacobvitz's characterization of DLJ's claim as impaired and argues that

even if DLJ Mortgage's claim was impaired, all of the other plan requirements set forth in

§ 1129(a) were satisfied because the Second Amended Plan "does not discriminate unfairly" and

is "fair and equitable."  *Id.* at 19-20.  Debtor adds that even if not, he was prepared to provide a

third amended plan.  *Id.*

In its Response, Appellee asserts that the bankruptcy court correctly found that Debtor's Second Amended Plan impermissibly modified DLJ's mortgage rights.  Doc. 23 at 22-26. Appellee explains that while it did not take a position on the issue of whether preconfirmation arrearages must be satisfied by the plan's effective date, it agrees that Debtor's Second Amended Plan nonetheless violates § 1123(b)(5) in other respects such that it could not be confirmed.  *Id.* Appellee contends that the Second Amended Plan, which proposed monthly mortgage payments of $1,469.65 and monthly arrearage payments of $417.75, fails to definitively provide for full payment to DLJ Mortgage because it (1) does not state the duration of the proposed monthly payments; (2) represents that this "offer" stands "until if and/or when outstanding adjudication is concluded and may require reexamination by the Court"; (3) fails to provide for what happens after adjudication; (4) does not bind Debtor to pay unpaid arrears in full on the loan's maturity date; (5) proposes an arrearage payment schedule that would take years beyond the 2035 maturity date of the loan; and (6) provides that Debtor's failure to make any payments will not result in default unless the failure is willful and deliberate which is contrary to the terms of the original Mortgage.  *Id.*

Addressing Debtor's arguments and for the reasons discussed below, the Court finds the bankruptcy court did not abuse its discretion in finding Debtor's proposed Second Amended Plan was facially unconfirmable because it impermissibly modified the contractual rights of DLJ Mortgage in violation of the anti-modification prohibition in § 1123(b)(5).

### 1.   <u>Loan Maturity Date</u>

Debtor's proposed plan on its face does not provide for full payment of DLJ Mortgage's claim by the loan maturity date of December 1, 2035, as he argues.  To the contrary, a plain reading of Debtor's Second Amended Plan (1) communicates that Debtor is challenging DLJ

Mortgage's proof of claim; (2) hints at potential eligibility for a Veteran's Loan; (3) suggests that DLJ Mortgage could sell the loan; (4) improperly offers an additional lien on property secured solely by the debtor's principal residence; (5) offers monthly mortgage payments below the original contractual amount;[14] (6) offers monthly arrearage payments that by the bankruptcy court's estimate would take more than thirty years to pay even without accrual of any interest on the outstanding arrearage amount; (7) sets a time limit on the proposed plan until "outstanding adjudication" is concluded; and (8) suggests that reexamination by the Court may be required thereafter. Doc. 20 at 273. Thus, based on a plain reading of Debtor's Second Amended Plan, far from proposing a definitive cure to the default that would render DLJ's Mortgage's claim unimpaired, Debtor essentially proposes to remain in default until such time as Debtor obtains favorable appellate review of DLJ Mortgage's proof of claim, secures an alternative loan or the loan is sold, withdraws the proposed plan as expired pending litigation outcomes, or satisfies the prepetition arrearage at some unknown time well beyond the loan maturity date. *See In Re Otero Mills, Inc.*, 31 B.R. 185, 186 (Bankr. D.N.M. 1983) (explaining that a creditor is impaired until the time the default is cured); *see also In Re Jones*, 32 B.R. 951, 957 (Bankr. D. Utah 1983) (explaining that a class is either impaired or not and that a cure is meant to provide certainty).

Additionally, Debtor's argument that his Second Amended Plan does not alter the maturity date of the mortgage because the Note does not preclude a balloon payment of any

---

[14] The bankruptcy court acknowledged that Debtor and Mrs. Jacobs testified they entered into negotiations with EMC Mortgage Corp., a predecessor in interest in DLJ Mortgage with respect to the Note and Mortgage, for a modification to their loan under the Home Affordable Modification Program ("HAMP"). Doc. 20 at 293. Under the HAMP loan modification, Debtor's mortgage payments on the Property would be approximately $1,500 including taxes and insurance. *Id.* For purposes of ruling on the Motion to Convert or Dismiss, the bankruptcy court construed evidence in favor of Debtor and Mrs. Jacobs and assumed a monthly mortgage payment of $1,500 from the date of nonpayment when calculating prepetition arrearages. *Id.* at 294. The bankruptcy court also acknowledged that as a 100% disabled veteran, Debtor was currently exempted from paying property taxes on the Property. *Id.* at 293.

mortgage and arrearage payments still owing on that date is unavailing.[15]   To be clear, Debtor's

Second Amended Plan does not provide for a balloon payment on the loan maturity date of the

Mortgage.[16]   Debtor nonetheless argues that the Note does not preclude a balloon payment

because it provides that "[i]f, on December 1, 2035, I still owe amounts under this Note, I will

pay those amounts in full on that date, which is called the 'Maturity Date'." Doc. 20 at 14.   Yet

DLJ Mortgage's claim is enforcing on the Mortgage, not the Note,[17] and the Mortgage terms

explicitly require periodic payments, *i.e.,* "Borrower owes Lender three hundred eight thousand

and 00/100 (U.S. $308,000.00) plus interest.   Borrower has promised to pay this debt in *regular*

*Periodic Payments* and to pay the debt in full not later than December 1, 2035." Doc. 20 at 37

(emphasis added).   *See generally, In Re Hamilton*, 401 B.R. 539, 543 (1st Cir. BAP 2009)

(holding that a proposed balloon payment was not equal to the payment that preceded it in the

context of required periodic payments on a secured claim under a chapter 13 plan and thereby

precluded confirmation of a proposed plan); *see also generally In Re Otero Mills, Inc.*, 31 B.R. at

---

[15] The bankruptcy court estimated that based on Debtor's Second Amended Plan, the unpaid arrearages alone would amount to a balloon payment of $195,000 due on December 1, 2035.  Doc. 20 at 314.  The bankruptcy court further stated that "[e]ven if the Second Amended Plan were to require a balloon payment on the maturity date of the loan, Debtor's proposed treatment of DLJ's claim impermissibly modified DLJ's contract rights under the Mortgage." *Id.*

[16] Debtor's July 11, 2022, Small Business Disclosure Statement provides for monthly mortgage payments of $1,887.40 on DLJ Mortgage's secured claim to begin on September 1, 2022, and end on December 1, 2025.  Doc. 20 at 261.  It indicates that a "balloon" final payment that is "negotiable." *Id.*  The Disclosure Statement similarly provides for arrearage payments of "$417.75 and Negotiable." *Id.  See In Re Bridgepoint Nurseries, Inc.*, 190 B.R. 215, 223 (Bankr. D.N.J. 1996) (stating that disclosure statements do not bind the parties or only the provisions of a confirmed plan do so).

[17] Pursuant to the bankruptcy court's May 24, 2021, Memorandum Opinion granting *in rem* stay relief to DLJ Mortgage, Judge Jacobvitz explained that

> Debtor and his spouse together have systematically leveraged their multiple bankruptcy filings to avoid making mortgage payments on the Property for almost ten years.  Through Case 2, Rudy [Handler] Jacobs was granted a discharge of any personal liability on the Note, and if the Note indebtedness is community debt (as it appears to be), Debtor's community liability on the Note was also discharged in Case 2. *As a result, DLJ Mortgage can only enforce the Mortgage in rem*.

Doc. 10 at 116 (emphasis added).

186 (explaining that proposal to pay a lump sum to cure default upon sale of property alters terms of original contract).  Moreover, the Mortgage provided for nine "Rider" options,[18] including one for a balloon payment which is *not* checked.  *Id.*  Therefore, neither the Second Amended Plan nor the Mortgage provide for a balloon payment, and Debtor's argument out of whole cloth that making a balloon payment on the loan maturity date would cure the default on his Mortgage and leave DLJ Mortgage's rights intact in the meantime is disingenuous and misleading.

## 2.    Nonbinding Case Law

Debtor next argues that the bankruptcy court erred by not relying on nonbinding case law supportive of Debtor's position that Chapter 11 debtor-mortgagors can cure their prepetition arrearage on residential mortgage by making installment payments under their plan and would not thereby be modifying mortgagee's rights.  Doc 20 at 16-18.  In support, Debtor cites case law with little to no explanation or substantive argument and without distinguishing facts or relevant governing statutes.  *Id.*  Instead, Debtor, in large part, provides dicta in his parenthetical explanations to support his broad legal theory that Chapter 13's cure and anti-modification principles, some of which are not found in Chapter 11, should apply in full force in the Chapter 11 context.[19]

---

[18] *See* Mortgage, Section (H), "Riders" means "all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]: Adjustable Rate Rider, Balloon Rider, VA Rider, Condominium Rider, Planned Unit Development Rider, Biweekly Payment Rider, Second Home Rider, 1-4 Family Rider, and Other(s) (specify).  Doc. 20 at 27.  *The only boxes checked are Adjustable Rate Rider and Planned Unit Development Rider.  Id.*

[19] Debtor cites and provides explanatory parentheticals as follows:  *In re Taddeo*, 685 F.2d 24 (2nd Cir. 1982) ("curing a default" in Chapter 11 means the same thing as it does in Chapters 7 or 13); *In re Forest Hills Associates*, 40 B.R. 410 (Bankr. S.D.N.Y. May 21, 1984) (that *Taddeo's* holding applies to a proposed cure under Chapter 11 is beyond dispute); *In re DeSeno*, 17 F.3d 642 (3rd Cir. 1994) (recognizing that § 1123 of Chapter 11 and § 1322 of Chapter 13 "are parallel provisions," and stating that "Congress' " understanding of the authorization to cure defaults in each was identical); *In re NextWave Personal Communications, Inc.,* 244 B.R. 253 (Bankr. S.D.N.Y. Jan. 31, 2000) (holding in *Taddeo* applies with equal force in Chapter 11 context); *In re Phoenix Business Park Ltd. Partnership*, 257 B.R. 517 (Bankr. D. Ariz. Jan. 12, 2001) (calling *Taddeo* "the seminal case on cure"); *In re Garcia*, 276 B.R. 627 (Bankr. D.

In its October 14, 2022, Memorandum Opinion, the bankruptcy court discussed at length the reasoning of *In re Lennington* and *In re LaPorta*, two cases representative of Debtor's legal theory, and why it did not find it persuasive. Doc. 20 at 307-19. The bankruptcy court further explained it was following its 2012 opinion in *In Re Cottonwood Corners Phase V, LLC*, 2012 WL 566246 (Bankr. N.M. Feb. 17, 2012), wherein the bankruptcy court had determined that § 1124(2)(A) requires a Chapter 11 plan to provide for payment of pre-confirmation arrearages on the secured claim in full by the plan effective date to satisfy the cure requirements for the claim to be deemed unimpaired.[20] Doc. 20 at 302, n. 61. And elsewhere the bankruptcy court

---

Ariz. April 22, 2002) (discussing concepts of cure and modification); *In re Lennington*, 288 B.R. 802 (Bankr. C.D. Ill. Jan. 30, 2003) (recognizing the right of an individual Chapter 11 debtor to reinstate a residential mortgage and cure a pre-petition arrearage in installment payments); *In re Snow*, No. 02-33778 (Bankr. E.D. Tenn. Apr. 6, 2004) (cure and modification are separate and distinct); *In re LaPorta*, 578 B.R. 792 (Bankr. N.D. Ill. Dec. 5, 2017) (same); *In re Depietto*, 2021 WL 3287416 (S.D.N.Y. Aug. 2, 2021) (*Taddeo* authorizes cure in Chapter 11 similar to that in Chapter 13); and *In re Bozeman*, 57 F.4th 895 (11th Cir. 2023) (§ 1322(b)(5) refers to "cure-and-maintain exception"). Doc. 20 at 16-18.

[20] Before the bankruptcy court in *Cottonwood Corners* was confirmation of an Amended Plan of Reorganization to which Cottonwood's largest creditor objected. 2012 WL 566426 at *1. The bankruptcy court determined, *inter alia*, that the creditor's claim was impaired under the proposed plan because it proposed to cure arrearages over the course of 5.75 years after the plan's effective date. *Id.* at *12. The bankruptcy court explained that

> Bankruptcy courts that have addressed cure amounts under 11 U.S.C. § 1124(2)(A) appear to be virtually uniform in their opinion that the cure "must occur, in full, prior to or on the effective date of the plan in order to restore the parties to their pre-default state. The effect of § 1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if "cure" occurs in full and immediately. *In re Schatz*, 426 B.R. 24, 27 (Bankr. D.N.H. 2009). *See also Tri-Growth Centre City Ltd.*, 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992); *In re Jones*, 32 B.R. 951 (Bankr. D. Utah 1983). This interpretation is consistent with prior New Mexico bankruptcy case law. *See In re Otero Mills, Inc.*, 31 B.R. 185, 186 (Bankr. D.N.M. 1983).

> Although Cottonwood draws analogies between a debtor's cure rights under Chapter 13 and the cure provisions of 11 U.S.C. § 1124 governing claim impairment in Chapter 11 cases, Chapter 13 actually contains no analogous provision to Section 1124. Further, unlike Chapter 13 cases, the concept of impairment in Chapter 11 cases affects whether a class of claims may vote to accept or reject a plan, and whether a plan proponent must satisfy fair and equitable and no undue discrimination requirements to satisfy confirmation requirements with respect to a dissenting class of claims. *See* 11 U.S.C. §§ 1126(f), 1129(a)(8) and 1129(b). The ability to cure an arrearage over the life of a Chapter 13 plan is not analogous to the cure provisions for purpose of nonimpairment in Chapter 11. Moreover, even if it were, the nonimpairment provisions of Chapter 11 simply do not permit a situation like the one at issue, wherein the debtor proposes to spread out cure amounts over the course of 5.75 years, a time period that is longer even than the maximum plan length allowed under Chapter 13.

cited case law it found equally persuasive, including from other bankruptcy courts within the Tenth Circuit.[21]   Doc. 20 at 312, n. 75.

In its January 6, 2023, Memorandum Opinion, the bankruptcy court explained that while there is support for Debtor's position in the caselaw, it was not prepared to amend its conclusion that the anti-modification prohibition in § 1123(b)(5) requires payment of all preconfirmation arrearages on a loan secured only by the debtor's principal residence in full by the effective date of a chapter 11 plan.   Doc. 20 at 360.

The Court finds that the bankruptcy court did not abuse its discretion in relying on case law different from what Debtor would have preferred.[22]   Debtor offers no binding precedential authority and this Court need not parse through the cases he cites to distinguish facts and determine actual holdings.   Under principles of *stare decisis,* a decision of a federal district court judge or bankruptcy court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.   *In re Jones*, 538 B.R. 844, 848 (Bankr. W.D. Okla. 2015) (citing *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co., Ltd.,* 240 F.3d 956 (11ᵗʰ Cir.2001); *Threadgill v. Armstrong World Industries Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991)).   "Rather, binding precedent should be left to the Supreme Court and

---

*Id.* at *13.

[21] The bankruptcy court cited, *inter alia*, *In re Jones*, 32 B.R. 951, 957 (Bankr. D. Utah 1983) (explaining that "Section 1124(2) requires that the curing of the default occur as of the effective date of the plan because the creditor is impaired until the time the default is cured"); *In re Otero Mills, Inc.*, 31 B.R. 185, 186 (Bankr. D.N.M. 1983) (same).   Doc. 20 at 312, n. 75.

[22] *See also Validity, construction, and effect of provisions for cure of debtor's default, under 11 U.S.C.A. § 1123(a)(5)(g) and 1124(2)(a), in reorganization plan under chapter 11 of Bankruptcy Code of 1978 (11 U.S.C.A. § 1101 et seq.),* 98 A.L.R. Fed. 847 at §§ 2, 8 (Sept. 26, 2023) ("It has been recognized by courts in the Fifth, Eighth, Tenth, and Eleventh Circuits that, in order to invoke the cure provisions, the debtor must pay off all of its debt arrearages to affected creditors by the effective date of the debtor's reorganization plan under chapter 11[.]").

the Tenth Circuit Court of Appeals." *In re McGrath*, 621 B.R. 260, 264 (Bankr. D.N.M. Oct. 2, 2020).

In sum, Debtor's argument is not that the bankruptcy court misapplied controlling law, but that it did not apply his preferred view of what the law should be in this district.  In the absence of binding case law providing otherwise, the bankruptcy court's choice to follow its own prior decision and case law from courts in the Tenth Circuit, and elsewhere, that support its holding does not render either of its orders legally deficient.  *See generally, Clarendon Nat'l Ins. Co. v. Glickauf*, No. 18-CV-02549-CMA-NYW, 2019 WL 7168657, at *5 (D. Colo. Dec. 23, 2019) (overruling objections to proposed findings and explaining that in the absence of binding case law providing otherwise, the choice to follow non-binding persuasive authority over other non-binding persuasive authority does not render an order legally deficient).

### 3.   **Impairment**

Last, Debtor disagrees with Judge Jacobvitz's characterization of DLJ's claim as impaired and argues, without more, that even if DLJ Mortgage's claim was impaired, all of the other plan requirements set forth in § 1129(a) were satisfied because the Second Amended Plan "does not discriminate unfairly" and is "fair and equitable."  *Id.* at 19-20.  Debtor adds that even if not, he was prepared to provide a third amended plan.  *Id.*  Debtor's argument, however, relies on his legal theory that his Second Amended Plan did not have to provide for payment of all arrearages due DLJ Mortgage by the plan's effective date in order to cure the default and render DLJ Mortgage's claim unimpaired.  Because the Court finds no error with the bankruptcy court's holding to the contrary, Debtor's argument necessarily fails.

**B.**   **Whether the bankruptcy court erred by dismissing the bankruptcy case for "cause" pursuant to 11 U.S.C. § 1112(b) because Debtor's proposed Second Amended Plan was filed after his chapter 11 case was pending for two and one-half years without any payments on his home mortgage loan secured only by Debtor's principal residence.**

In its October 14, 2022, Memorandum Opinion, the bankruptcy court discussed that § 1112(b) governs dismissal and conversion of chapter 11 cases and provides a *non-exhaustive* list of grounds that constitute "cause" to do so.  Doc. 20 at 298-301.  The bankruptcy court further discussed though not specifically enumerated in the statute, case law bears out that "cause" for conversion or dismissal includes a debtor's bad faith in filing or prosecuting a chapter 11 case and the failure to file a confirmable plan within a reasonable time.  *Id.*  The bankruptcy court explained that Debtor had been in the chapter 11 case for close to three years during which time had made no payments to DLJ Mortgage, that arrearages accumulating post-petition alone exceeded $50,000, that Debtor's Second Amended Plan (his fourth proposed plan) was facially unconfirmable, that Debtor had not shown a "reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time," and that Debtor had not demonstrated any "unusual circumstances" that would qualify as an exception to mandatory dismissal or conversion.  *Id.* at 319-20.  The bankruptcy court, therefore, concluded that the Trustee had established cause to dismiss or convert Debtor's case based on Debtor's inability to effectuate a confirmable plan.  *Id.*

Debtor argues that the bankruptcy court erred in finding "cause" for dismissal or conversion of his Chapter 11 case.  Doc. 20 at 20-22.  In support, Debtor argues that the bankruptcy court failed to identify which paragraph from § 1112(b)(4) it was referring to as grounds for cause and that he "fails to see that his case fulfills any of the [listed] 'causes' except

for, perhaps (J)[.]"[23]   *Id.*  Debtor disputes, however, that even § 1112(b)(4)(J) would apply because he filed several disclosure statements and plans in his case at the direction of the bankruptcy court.  *Id.*  Debtor further argues that Appellee failed to meet its burden of demonstrating cause because (1) the bankruptcy court did not rely on Appellee's "bad faith" argument and (2) Debtor's proposed Second Amended Plan, contrary to the bankruptcy court's holding, was confirmable.  *Id.*

Appellee asserts that the circumstances for "cause" found in § 1123(b)(4) are illustrative and not exhaustive and that failure to file an acceptable plan within a reasonable time after the commencement of a chapter 11 case may be cause for dismissal or conversion.  Doc. 23 at 20-21. Appellee asserts that the bankruptcy court correctly determined that Debtor's Second Amended Plan, proposed more than two and one-half years after filing his bankruptcy petition, was facially unconfirmable, and that by the time the bankruptcy court granted its motion, this case had been pending for nearly three years during which Debtor had proposed four plans and not made a single payment on his Mortgage since November 2011.  *Id.*

The Court finds the bankruptcy court did not abuse its discretion in finding cause to convert or dismiss Debtor's case.  Section 1112(b)(4) lists 16 grounds that constitute "cause" for conversion or dismissal.  *See* Section II.B.1, *supra*.  The list is not exhaustive.  *Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir. 1989) (list of enumerated grounds is not exhaustive); *In re SB Props. Inc.,* 185 B.R. 198, 203 (E.D.Penn. 1995) (stating that the "legislative history of § 1112(b) confirms that what may constitute 'cause' is non-exhaustive").  Thus, given the nonexhaustive nature of what may constitute cause for conversion or dismissal, Debtor's

---

[23] Section 1112(4)(b)(J) provides that the term "cause" includes . . . "(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court[.]"

argument that the bankruptcy court failed to identify which paragraph from § 1112(b)(4) it was referring to as grounds for cause necessarily fails.  Debtor's second argument also fails because it relies on Debtor's legal theory that his Second Amended Plan did not have to provide for payment of all arrearages due DLJ Mortgage by the plan's effective date in order to cure the default and render DLJ Mortgage's claim unimpaired.  As previously stated, the Court finds no error in the bankruptcy court's holding to the contrary.

**C.**     **Whether the bankruptcy court abused its discretion by specifically ruling that dismissal, rather than conversion, was in the best interest of creditors of the estate.**

In its October 14, 2022, Memorandum Opinion, the bankruptcy court discussed dismissal versus conversion as follows:

> Although the Motion seeks alternative relief, at closing argument, counsel for the United States Trustee requested dismissal of Debtor's bankruptcy case rather than conversion to chapter 7.  Whether to dismiss or convert depends on which remedy is "in the best interests of creditors and the estate," § 1112(b)(1), and requires the Court to exercise its discretion based upon the totality of the circumstances. *Autterson*, 547 B.R. at 409.[24]  A moving party's preference for dismissal rather than conversion is relevant to the Court's ultimate determination of whether to dismiss or convert the case to chapter 7.  *See Autterson*, 547 B.R. at 409 ("The Court starts with the positions of the parties."); *In re Van Eck*, 425 B.R. 54, 67 Bankr. D. Conn. 2010) ("Presumably, the parties will be the best judge of their own best interests, and if all of the parties agree on one course of action, the court should accommodate their desire." (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[7] (Richard Levin & Henry J. Sommer eds., 16th ed.))).  The Court agrees that dismissal of Debtor's chapter 11 case is in the best interest of creditors and the estate.  Debtor's primary creditor is DLJ.  No other creditor has actively participated in this bankruptcy case.  The Court already has modified the automatic stay with respect to DLJ's *in rem* claim.  Debtor has appealed the Foreclosure Judgment in the State Court Action.  That appeal is stayed under § 362(a).  Dismissal of this bankruptcy case will result in the appeal moving forward, and resolution of that appeal is key to the ultimate resolution of Debtor's dispute with DLJ.

---

[24] *In re Autterson*, 547 B.R. 372, 409 (Bankr. D. Colo. 2016) ("Cause" for dismissal existed where debtor "failed, during two years of bankruptcy proceedings, to confirm a plan of reorganization – and no successful reorganization appear[ed] likely in any reasonable timeframe.").

Doc. 20 at 321.

In its January 6, 2023, Memorandum Opinion, the bankruptcy court reiterated that based on the evidence before it at the final hearing, it concluded that dismissal, rather than conversion, was in the best interest of creditors.  Doc. 20 at 368-69.  The bankruptcy court further stated that Debtor had failed to present any evidence of unusual circumstances at the final hearing that would allow the Court to deny the motion after finding sufficient cause.  *Id.*

Debtor argues here that in the months following entry of the bankruptcy court orders on appeal, he filed an adversary proceeding in which he presented new evidence that amounts to "unusual circumstances" that, if known at the time, would have prevented dismissal of Debtor's case.  Doc. 20 at 23.

The Court finds that the bankruptcy court did not abuse its discretion in determining that dismissal as opposed to conversion was in the best interests of the creditors and the estate.  Once cause is established under § 1112(b), the Court must dismiss or convert the case, or appoint a Chapter 11 trustee, unless the court finds "unusual circumstances ... that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."  11 U.S.C. § 1112(b)(2).  "The bankruptcy court has broad discretion ..." in fashioning relief under § 1112(b).  *Hall,* 887 F.2d at 1044.  The bankruptcy court did so here.

Moreover, Debtor's argument that he presented new evidence of unusual circumstances in a newly filed adversary proceeding months after the bankruptcy court's order is unavailing because this Court's function when sitting as an appellate court is to review the court's decision based on the record that was before the bankruptcy court, not to reconsider the bankruptcy court's decision based on new evidence.  *Fassett,* 807 F.2d at 1165.  The Court therefore finds Debtor's argument is without merit.

29

**D.**   **Whether the bankruptcy court abused its discretion by disregarding the indubitable equivalent concept because it believed it was not relevant to its conclusion that the Second Amended Plan cannot be confirmed because it violates the anti-modification prohibition in § 1123(b)(5).**

Section 1129(a)(8) requires, with respect to each class of claims or interests, that such class has accepted the plan, or that such class is not impaired under the plan.  If, with respect to a class of secured claims, a plan meets all of the requirements for confirmation except those of subsection eight, it may nevertheless be confirmed under § 1129(b)(1) if the plan does not unfairly discriminate and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

With respect to secured claims, "fair and equitable" is defined by § 1129(b)(2)(A) to include three alternative treatments. It provides:

> (A)   With respect to a class of secured claims, the plan provides—
> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

This statute thus defines three conditions under which a plan may be confirmed, or "crammed down," over the objections of a secured creditor.  *See In re Inv. Co. of The Sw., Inc.,* 341 B.R. 298, 318 (B.A.P. 10th Cir. 2006).

30

Subsection (b)(2)(A)(i) of § 1129 in essence allows the plan proponent to write a new loan for full payment at a market rate of interest secured by the creditor's prepetition collateral. Subsection (b)(2)(A)(ii) permits a plan that sells the creditor's collateral free and clear of the lien, so long as the lien attaches to all net proceeds of the sale. *Id.* Finally, § 1129(b)(2)(A)(iii) allows a plan to alter the rights of the secured creditor if, and only if, the creditor will receive the "indubitable equivalent" of its claim. *Id.; see also 7 Collier on Bankruptcy,* ¶ 1129.02[5][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006).

Debtor argues that his Second Amended Plan offered an "indubitable equivalent" to satisfy DLJ Mortgage's claim that included cash payments and a Promissory Note secured by real property totaling $519,044.75 that the bankruptcy court failed to properly consider in its October 14, 2022, Memorandum Opinion.[25]  Doc. 20 at 273.

In its January 6, 2023, Memorandum Opinion, the bankruptcy court explained that it did not discuss the indubitable equivalent concept in its earlier opinion because it was not relevant to the Court's conclusion that the Second Amended Plan could not be confirmed because it violates the anti-modification prohibition in § 1123(b)(5).  Doc. 20 at 361-64.  The bankruptcy court explained, *inter alia,* that subsection (1) of § 1129(a) provides that the plan must "compl[y] with the applicable provisions of title 11" and that included therein is the anti-modification prohibition set forth in § 1123(b)(5).  *Id.*  The bankruptcy court went on to explain that

> . . . under § 1123(b)(5), a plan may **not** modify the rights of holders of a claim secured only by the debtor's principal residence.  The Bankruptcy Code's "indubitable equivalent" concept, expressed in §§ 361(3)[26] and 1129(b)(2)(A)(iii),

---

[25] Debtor argued in his Motion to Alter and Amend that he was offering his "unencumbered Oregon property as indubitable equivalent in the form of a cash collateral combined with a promissory note secured with the real property, to place in escrow" in his treatment of DLJ Mortgage's claim.  Doc. 20 at 345.

[26] 11 U.S.C. 361 is entitled "Adequate protection" and explains how adequate protection may be provided when required under §§ 362-364, which are not applicable here.

does not apply to compliance with the requirement under § 1123(b)(5) that all preconfirmation arrearages be paid in full by the plan effective date.

As stated in the [October 14, 2022] Memorandum Opinion at p. 24, "if the cure of arrearages takes place over time after the plan goes into effect, the plan modifies the [rights of the holder of the] claim because it negates the claimholder's contractual right to immediate payment of the full arrearage amount following acceleration of the loan after default." That is true regardless of whether the plan provides for the secured creditor's realization of the indubitable equivalent of its claim by adequately protecting the creditor's eventual payment in full.

*Id.* (emphasis in original). Additionally, elsewhere in its January 6, 2023, Memorandum Opinion, the bankruptcy court explained that Debtor could not avoid application of § 1123(b)(5) by granting the secured creditor an additional lien under its plan in order to transform the claim into a claim that is no longer secured solely by the debtor's principal residence. Doc. 20 at 368 (citations omitted). In other words, Debtor's proposed "indubitable equivalent" offer, which relies on an improper additional lien, is inherently invalid.

Debtor's argument does not address the bankruptcy court's reasoning or offer any substantive argument to the contrary. Additionally, even if Debtor's "indubitable equivalent" offer were valid, Debtor's argument relies on his legal theory that his Second Amended Plan did not have to provide for payment of all arrearages due DLJ Mortgage by the plan's effective date in order to cure the default and render DLJ Mortgage's claim unimpaired. As previously stated, the Court finds no error in the bankruptcy court's holding to the contrary. The Court, therefore, finds that the bankruptcy court did not abuse its discretion in finding the indubitable equivalent concept was not relevant to its conclusion that the Second Amended Plan could not be confirmed.

**E.**    **Whether the bankruptcy court abused its discretion by failing to promulgate the Second Amended Plan due to the inappropriate objection of DLJ Mortgage's counsel, who was not a party to the motion.**

Last, Debtor argues on appeal that the bankruptcy court falsely stated in its October 14, 2022, opinion that counsel for DLJ Mortgage, Elizabeth Dranttel, did not join in the evidentiary hearing on Trustee's Motion to Convert or Dismiss.  Doc. 20 at 26.  Debtor further argues that Ms. Dranttel made "outbursts" at the hearing by inappropriately objecting to Debtor's Second Amended Plan and making an unauthorized closing statement.  Doc. 20 at 27.

To begin, Debtor did not raise this argument before the bankruptcy court.  *See Golfland Entm't Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.),* 119 F.3d 852, 857 (10th Cir. 1997) (noting that "we generally will not consider issues on appeal that were not presented" below) (internal quotation marks omitted)).  That said, Debtor's arguments regarding Attorney Dranttel's participation in the evidentiary hearing on Trustee's Motion to Convert or Dismiss are not supported by this Court's review of the hearing transcript.

The bankruptcy court held a final evidentiary hearing over four non-consecutive days, *i.e,* July 21, 2022, August 22, 2022, September 2, 2022, and September 14, 2022.  Doc. 15.  Over the course of these four days, Attorney Dranttel's participation is limited.  On July 21, 2022, when the bankruptcy court took appearances, the transcript states:

> THE COURT:       Okay.  Any other appearances?
>
> MS. DRANTTEL:    Yes, Your honor.  Elizabeth Dranttel appearing on behalf of creditor DLJ Mortgage Capital, Inc.  And, Your Honor, I also have a couple of law clerks here to observe and learn.  I have Abby (inaudible) and Abraham (inaudible).
>
> THE COURT:       Well, Ms. Dranttel, it's my understanding that your client, DLJ Mortgage, did not join in the Motion to Dismiss or Convert and were objecting; is that right?

MR. DRANTTEL:       That's correct, Your Honor.

THE COURT:          So you're just here as an observer?

MS. DRANTTEL:       *As an observer and interested party*.

Doc. 15 at 883-84 (emphasis added).  Later in the same hearing in the context of discussing

exhibits and witnesses, the transcript states:

MS. DRANTTEL:       Yes, Your Honor.  Since we're addressing some preliminary
                    matters and in full candor to the Court, Mr. and Mrs. Jacobs
                    have also listed me as a witness on their witness list.

RUBY JACOBS:        I - - I - - you're not on mine.

MS. DRANTTEL:       And - - oh.

RUBY JACOBS:        You're not on my list.

MS. DRANTTEL:       Oh.  I guess I'm just on Mr. Jacobs' witness list.  And so,
                    again, Your Honor, in terms of what I would be able to
                    testify to, I would assert a litigation privilege.  Anything that
                    I have done in this case is on behalf of my client and
                    representation of my client.  Anything with regard to things
                    that have not been filed will be covered by attorney/client
                    privilege.

THE COURT:          Well, let me do this.  Let me wait and see if he actually wants
                    to call you.

MS. DRANTTEL:       Okay.

THE COURT:          If he does, I'll probably ask Mr. Jacobs to do an offer of
                    proof relative to you, and then I'll deal with that issue - -

MS. DRANTTEL:       Very good.  Thank you, Your Honor.

Doc. 15 at 907-08.  Later in the same hearing during Attorney Pena's questioning of Mr. Jacobs,

the Court asked:

THE COURT:          Before Mr. Pena continues the examination of Mr. Jacobs,
                    let me ask Ms. Dranttel this question: You asked the Court
                    to make a decision about whether you could be called as a
                    witness.  And so I was wondering if that's the reason you're

34

|  | staying in the courtroom or if you would [be] here any[way] to observe the proceedings?  Because if you're only here because you might be a witness, I was going to go ahead and accelerate the ruling. |
|---|---|
| MS. DRANTTEL: | No, Your Honor.  I participated in the preliminary hearing on the Trustee's motion as an interested party and as a creditor who is involved in this litigation as to the subject property that the Debtor resides in on multiple plats.  So I plan to attend as well. |
|  | I had no idea that Mr. Jacobs would list me as a witness.  And I did not receive his witness list until that, in fact, was filed.  I believe that that was filed on the 13th.  And so that's the first time that I believed that he intended to call me as a witness.  And, of course, as you know, I opposed that. |
| THE COURT: | Oh, (inaudible) you're welcome to be here, and I understand why you're interested in being here.  So I'll just go ahead and proceed with the - - with addressing that issue if Mr. Jacobs actually calls you. |

Doc. 15 at 992-93.  Later in the same hearing when discussing scheduling matters, the transcript

states:

| THE COURT: | . . . And maybe when we start up again on the 19th, we'll take up the issue of Ms. Dranttel testifying, so that will give her more flexibility in not having to stay the whole time, if she should make the decision. |
|---|---|
|  | And so on that score, what I'll do is have Mr. Jacobs make an offer of proof as to what you intend to ask, the subject matters in which you intend to explore in asking questions of Ms. Dranttel, and then why you think that's relevant.  And that I'll allow both the UST and Ms. Dranttel to respond before I make a decision.[27] |
|  | Okay.  So Mr. Pena, and why don't you go ahead - - Ms. Dranttel? |
| MS. DRANTTEL: | Your Honor, just was another preliminary matter, the - - Mr. Jacobs did file his Second Amended Plan and Disclosure Statement on July 11.  There was no notice of deadline for a |

---

[27] Mr. Jacobs did not end up calling Ms. Dranttel as a witness during the evidentiary hearing.

response, but the way I calendar it, the deadline would be August 4th.  But since we're continuing this hearing - -

THE COURT:           On the plan?  Well, what we typically do, and, I mean, what we could so, is we could simply fix deadlines for Mr. Jacobs to send out the plan packages and fix a deadline to object to the disclosure statement so that that's in progress and isn't delayed by this proceeding.

What do you think of that concept, Ms. Dranttel?

MS. DRANTTEL:        Your Honor, that's fine.  I'm - - just wanted to make sure that we have a deadline for that, and it was going to be prior to this continued hearing.  I would (inaudible).

THE COURT:           Sorry, what was the last thing you said?

MS. DRANTTEL:        If it was going to be prior to the continued hearing, I would want to start working on that, so it's just a little - - it's a little tight there.

THE COURT:           Okay.  Mr. Pena, what do you think?

MR. PENA:            I'd just ask that any deadlines take place after the continued hearing is concluded, because what happens with regards to a conversion or dismissal may impact whether a plan needs to be objected to or not objected to.

THE COURT:           Okay.  I mean, my thought before was to wait until I ruled on the Motion to Confirm or Dismiss before we fix a deadline to send out the plan packages and - - you know, I don't know how I'm going to rule, but conceivably, the ruling could require a plan of certain type to avoid dismissal or conversion, and it might not be that.  But - - but that's among the possibilities.  And if that was so, it would probably make sense not to send out the plan packages yet.

On the other hand, a list of people that you send the packages to is very small.  And, you know, it's not a big burden if we do it.

So with that kind of general discussion background let me ask you, Ms. Dranttel, if your preference would be that - - that we'll fix a deadline now to send out the plan packages, which would also include a deadline to object to disclosure statement.  Or what do you think, it makes more sense to

|              |                                                                                                                                                                                                                                                             |
|--------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | wait to do that till after the Court rules on the pending Motion to Dismiss or Convert?                                                                                                                                                                      |
| MS. DRANTTEL: | Your Honor, I think that the second option makes more sense.  I just wanted to make sure if my deadline was coming up, I wasn't going to miss it.  So in essence, if you're staying the requirement to respond even without a proper notice, then that's, you know, acceptable. |
| THE COURT:   | Okay.  I mean, I don't think there's any deadline right now.                                                                                                                                                                                                 |
| MS. DRANTTEL: | Right.                                                                                                                                                                                                                                                       |
| THE COURT:   | Because the plan packages haven't been sent out.                                                                                                                                                                                                            |
|              | Mr. Jacobs, what's your view on this?                                                                                                                                                                                                                        |
| MR. JACOBS:  | I'm with you [on] this, Your Honor.  (Inaudible).                                                                                                                                                                                                            |

Doc. 15 at 1063-66.

On August 22, 2022, Ms. Dranttel entered her appearance.  Doc. 15 at 300.

On September 2, 2022, Ms. Dranttel entered her appearance and made a clarifying comment regarding the date findings of fact and conclusions of law were entered in the state court action.  Doc. 15 at 5, 182.

On September 14, 2022, the final day of the evidentiary hearing, the transcript states as follows:

|              |                                                                                                                                                             |
|--------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------|
| THE COURT:   | So let's do - - let's talk about closing argument.  We have basically 50 minutes for closing argument.  Mr. Pena.                                            |
| MR. PENA:    | Fifteen minutes is fine.                                                                                                                                     |
| THE COURT:   | Okay.  And so I'll give Mr. and Mrs. Jacobs 30 minutes, since there's two of you.  And you can allocate it between yourselves however you wish.              |
|              | So, Mr. Pena, why don't you proceed.                                                                                                                         |
| MS. DRANTTEL: | Your Honor, if I might, prior to the closing statements, Mr. and Mrs. Jacobs did file a second amended plan on                                               |

|                  | July 11th of 2022, which was stayed because of this proceeding. |
|------------------|--------|
| THE COURT:       | Right. |
| MS. DRANTTEL:    | DLJ Mortgage did file an objection to the first amended plan, and I just wanted to make it clear for the record that that objection to the first amended plan still pertains to the filed second amended - - amended plan.  And DLJ does find that plan unacceptable. |
| THE COURT:       | Okay.  And, I mean, if the Court doesn't dismiss or convert the case and if we proceed with confirmation of the plan on file, we'll give all the parties an opportunity to file an objection to - - first to the disclosure statement, because you have to deal with that before you deal with the plan. |
|                  | Go ahead - - and thank you, Ms. Dranttel. |
|                  | Go ahead, Mr. Pena. |

Doc. 15 at 787.

Based on the foregoing, there is no evidence that the bankruptcy court misrepresented Ms. Dranttel's nonparticipation in the four days of evidentiary hearings on Trustee's Motion to Convert or Dismiss.  Further, Ms. Dranttel did not make an unauthorized closing statement nor did she inappropriately object to Debtor's Second Amended Plan.  The transcript clearly demonstrates that Ms. Dranttel was not allotted any time for closing argument and when she informed the bankruptcy court of DLJ Mortgage's intent to object to the Debtor's Second Amended Plan, the bankruptcy court informed her that the parties would have an opportunity to file objections if it did not dismiss or convert the case.  Moreover, the reason for the bankruptcy court's finding that Debtor's Second Amended Plan was facially unconfirmable was because it failed to provide for payment of all preconfirmation arrearages due DLJ Mortgage by the plan's effective date in order to cure the default and render DLJ Mortgage's claim unimpaired.  As previously stated, the Court finds no error in the bankruptcy court's holding.  In sum, Debtor has

provided no evidence that Ms. Dranttel participated as anything more than an observer and interested party in the evidentiary hearing or that her comment regarding DLJ Mortgage's intent to object to Debtor's Second Amended Plan prejudiced Debtor or his spouse and/or was the basis of the bankruptcy court's decision.

For these reasons, the Court finds that the bankruptcy court did not abuse its discretion by failing to promulgate Debtor's Second Amended Plan due to Ms. Dranttel's comment at the evidentiary hearing.

## V.  <u>RECOMMENDATION</u>

The Court having reviewed the parties' submissions and the relevant law, and for the reasons set forth above, finds that Appellant's Brief in Chief is not well taken and recommends that the bankruptcy court's October 14, 2022, Memorandum Opinion and concurrent Order Dismissing Chapter 11 Case and the bankruptcy court's January 6, 2023, Memorandum Opinion and concurrent Order Denying Motion to Alter and Amend Judgment be **AFFIRMED**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**